## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| **MOMNT TECHNOLOGIES, INC., and MOMNT SERVICING COMPANY, LLC,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**ROBERT DEAN MURPHY JR.,**<br><br>**Defendant.** | **Civil Action No.:** |

## <u>COMPLAINT</u>

Through this action, Plaintiffs Momnt Technologies, Inc. and Momnt Servicing Company, LLC (collectively "Momnt" or "Plaintiffs") seek to hold Robert Dean Murphy, Jr. ("Murphy") (the "Defendant") individually liable in connection with his ownership of Flawless Results, LLC ("Flawless"), a home improvement contractor. The Defendant personally directed an illicit scheme which involved using Flawless to enter into contracts with customers in three states, arranging for customer financing, and then failing to complete the work. Instead of simply doing the work it was paid to do or providing refunds when it became clear that Flawless could not complete the work, the Defendant pocketed the proceeds from many unfulfilled contracts and Flawless and two of its owners, Jacob Chalmers Tryon ("Tryon") and John Steven Georges, Sr. ("Georges"), have now filed for Chapter 7 bankruptcy protections.

Momnt facilitated customer loans on behalf of Flawless' customers and brings this action against Defendant because he engaged in fraudulent conduct which resulted in damage to Momnt and its lending partner(s). In support thereof, Momnt states as follows:

## PARTIES

1.    Plaintiff Momnt Technologies, Inc. is a Delaware corporation with its principal place of business in Atlanta, Georgia.

2.    Plaintiff Momnt Servicing Company, LLC is a Delaware limited liability company with its principal place of business in Atlanta, Georgia.

3.    Non-party Flawless is a Limited Liability Company organized in New Mexico with a principal place of business at 3100 Pan American NE, Suite 11, Albuquerque, New Mexico 87107.

4.    Flawless filed a petition for Chapter 7 bankruptcy in the Bankruptcy Court for the District of New Mexico on or about March 12, 2024.  *In Re Flawless Results, LLC*, 1:25-bk-10289 (B.K.N.M., March 12, 2025).[1]

5.    Upon information and belief, Flawless has three co-owners ("Members").

---

[1] Momnt reserves the right to amend this Complaint to add Flawless, Tryon and Georges as defendants in the event that Momnt subsequently seeks and obtains relief from the automatic stay described under 11 USC § 362 from the Bankruptcy Court for the District of New Mexico.

6.      Defendant Murphy is a resident of Bernalillo County, New Mexico and a co-owner of Flawless.

7.      Non-party Georges is a resident of Bernalillo County, New Mexico and a co-owner of Flawless.

8.      Georges filed a petition for Chapter 7 bankruptcy in the Bankruptcy Court for the District of New Mexico on or about May 16, 2025.  *In Re Georges*, 1:25-bk-10601 (B.K.N.M., May 16, 2025).

9.      Non-party Jacob Chalmer Tryon ("Tryon") is a resident of Bernalillo County, New Mexico and a co-owner of Flawless.

10.     Tryon filed a petition for Chapter 7 bankruptcy in the Bankruptcy Court for the District of New Mexico on or about May 16, 2025.  *In Re Tryon*, 1:25-bk-10599 (B.K.N.M., May 16, 2025).

11.     Flawless and the Members operated a home improvement and remodeling company primarily providing services in New Mexico, Colorado and Texas.

12.     On March 18, 2025, the New Mexico Attorney General filed a lawsuit against Flawless and the Members alleging that they defrauded hundreds of New Mexico consumers by accepting payments for home remodeling work which was never completed, and then shut down operations and declared bankruptcy without providing refunds.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C.

§ 1332, due to the complete diversity of citizenship between the Plaintiffs and

Defendant and because the amount in controversy exceeds $75,000.00.

14.    The Court has personal jurisdiction over Defendant because the contract at

issue, executed by Flawless, contains a forum selection clause whereby Momnt and

Flawless submitted to the jurisdiction of the State or Superior Courts of Fulton

County or the United States District Court for the Northern District of Georgia:

> **JURISDICTION.** ANY SUIT, COUNTERCLAIM, ACTION
> OR PROCEEDING ARISING OUT OF OR RELATING TO
> THIS    AGREEMENT    OR    THE    TRANSACTIONS
> CONTEMPLATED HEREBY, ANY RELATED DOCUMENT
> OR UNDER ANY OTHER DOCUMENT OR AGREEMENT
> DELIVERED OR WHICH MAY IN THE FUTURE BE
> DELIVERED    IN    CONNECTION    HEREWITH    OR
> THEREWITH, OR ARISING FROM ANY RELATIONSHIP
> EXISTING IN CONNECTION WITH THIS AGREEMENT,
> MUST BE BROUGHT BY EITHER PARTY EXCLUSIVELY
> IN THE STATE OR SUPERIOR COURT OF FULTON
> COUNTY, GEORGIA OR IN THE UNITED STATES
> DISTRICT COURT FOR THE NORTHERN DISTRICT OF
> GEORGIA, AND THE PARTIES HEREBY IRREVOCABLY
> SUBMIT TO THE EXCLUSIVE JURISDICTION OF SUCH
> COURTS AND ANY APPELLATE COURTS THEREOF FOR
> THE PURPOSE OF ANY SUCH SUIT, COUNTERCLAIM,
> ACTION OR PROCEEDING OR JUDGMENT THEREON (IT
> BEING UNDERSTOOD THAT SUCH CONSENT TO THE
> EXCLUSIVE JURISDICTION OF SUCH COURTS WAIVES
> ANY RIGHT TO SUBMIT ANY DISPUTES HEREUNDER
> TO ANY COURTS OTHER THAN THOSE ABOVE).

Merchant Agreement § 22, attached hereto as Exhibit A.

15.     Venue is also proper in this Court due to the forum selection clause in the contract at issue.

16.     Defendant is bound by the venue and forum selection clauses as co-owner and agent of Flawless and because Defendant engage in his own wrongful conduct which he perpetrated by abusing the legal fiction of the corporate entity.

## **INTRODUCTION**

17.     Defendant defrauded consumers by permitting Flawless to accept payments for home improvement work that was never completed, using loan proceeds for personal gain, and failing to refund consumers once it became clear that Flawless would not complete the contracted work. The fraudulent conduct of Defendant and Flawless was willful, wanton and/or malicious.

18.     In addition, the Defendant (a co-owner of Flawless) intentionally undercapitalized Flawless (despite receiving millions in loan proceeds for home remodeling work) for the purposes avoiding obligations (filing for bankruptcy protections), and otherwise unlawfully took advantage of the legal fiction of the independent corporation for his own personal gain.

19.     Momnt seeks actual damages, equitable relief, and punitive damages, costs and attorneys' fees because the Defendant's actions were willful, wanton and malicious, resulting in significant harm to Momnt's business and reputation.

## FACTUAL ALLEGATIONS

20.     Momnt offers an embedded lending solution for businesses to provide low-friction, affordable financing to their customers at the point of need. The industries served by Momnt include home improvement and healthcare. Momnt partners with lenders to facilitate customer financing (the "Program"). Momnt's lending partners originate all loans, which Momnt then services.

21.     Cross River Bank is a lending partner who participates in the Program and who originated loans for customers of Flawless.  Momnt agreed to defend and indemnify Cross River Bank in connection with certain claims arising out of the conduct of Flawless pursuant to a master services agreement between Momnt and Cross River Bank.

22.     Flawless owns and operates a home improvement company which serves customers in New Mexico, Colorado and Texas.

### The Contract Relationship Between Flawless and Momnt

23.     On August 29, 2022, Flawless entered into a merchant agreement ("Merchant Agreement") to use Momnt's platform to facilitate lending solutions to customers of Flawless.

24.     The Merchant Agreement incorporated by reference the Operating Instructions, which are available on Momnt's website at

*https://www.momnt.com/operating-instructions/*. A true and correct copy of the Operating Instructions is attached hereto as Exhibit B.

25.    Pursuant to Section 17 of the Merchant Agreement, "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of Georgia without reference to the conflict of laws provisions thereof."

Flawless' Deceit and Fraud

26.    Beginning in March 2024, Momnt began receiving an increasing number of customer complaints regarding Flawless. These complaints stemmed from several issues, including but not limited to the quality of work performed by Flawless, that Flawless never completed the contracted work, or that Flawless never started the work at all.

27.    To date, Momnt has received a total of 67 customer complaints regarding Flawless. Among these complaints, 48 involved Flawless' failure to complete the contracted work or failure to provide quality services.

28.    In response to these complaints, on June 10, 2024, Momnt spoke with Flawless' owner, Georges, regarding these complaints, and advised Georges that Flawless needed to issue refunds to customers for whom Flawless could not complete the contracted work and/or provide Momnt with proof of completion of its pending contracts or face suspension and/or termination.

29.     The complaints against Flawless became increasingly more concerning, with Flawless customers claiming that they took out loans to pay Flawless for the work, that Flawless received the loans, but never performed any of the work.

30.     Some of the most concerning complaints that Momnt received were from Flawless customers claiming that they heard from former employees of Flawless that Flawless and/or Defendant had taken advantage of the customer, taken the proceeds of the customer's loan, ceased doing business and declared bankruptcy.

31.     By way of specific example, one Flawless customer complained to Momnt that she took out a loan to cover the initial cost of window and door replacement by Flawless.  She informed Flawless that the work was scheduled to begin in October 2024, but a Flawless employee told her that the shipment of windows and doors had been delayed and Flawless would reach out to reschedule the work. Flawless never reached out to reschedule the work. The customer stated that she followed up three times but was unable to reach anyone at Flawless.  Eventually, the customer received a call from a former salesperson of Flawless who explained that the company had taken advantage of her and others, that Flawless is no longer in business, and that the work supposed to be covered by the loan would not be completed.

32.     These complaints put in jeopardy many of the loans made to Flawless customers.

8

33.    On September 8, 2024, Momnt terminated its relationship with Flawless due to the numerous complaints from Flawless customers that no work was completed on projects for which Flawless received loan proceeds from Momnt.

34.    The fraudulent conduct of Defendant, and the Members, ultimately led to a lawsuit filed by the New Mexico Department of Justice, captioned as *State of New Mexico, ex rel. Raul Torrez v. Flawless Results, LLC et al.*, case number D-202-CV-2025-02288 ("Action"), which alleges that the Members individually, through Flawless, "engaged in a scheme to defraud hundreds of New Mexico consumers by offering to do remodeling work on consumers' homes, obtaining loans for consumers to finance down payments on the contracts, and then disappearing with the money without completing the contracted work."  The complaint is attached hereto as Exhibit C.

35.    Momnt's lending partner, Cross River Bank, is also named as a defendant in the Action by virtue of its role as lender.

36.    At all relevant times, the Defendant approved, endorsed, ratified, controlled and/or otherwise participated in the conduct alleged herein and the practices and operations conducted as one of the owners of Flawless.

The Merchant Agreement and Operating Instructions

37.    Section 2 of the Merchant Agreement requires Flawless to comply with all obligations and responsibilities in the Operating Instructions.

38.    Under Section 8(d) of the Merchant Agreement, a breach by Flawless entitles Momnt to exercise any and all rights and remedies at law or in equity that are available to it.

39.    Section 12 of the Agreement requires Flawless to indemnify, defend, and hold Momnt (including the lender, Cross River Bank in this instance) harmless from and against any and all losses, claims, investigations, litigation, proceedings, liabilities, damages, administrative charges, and expense related to Flawless' breach of any obligation owed to Momnt, including "failure of [Flawless] to comply with any applicable Federal, state, or local law, rule, regulation or ordinance" or "any Loss sustained by or threatened against [Momnt and any Lender] attributable in whole or in part to negligence, fraud, error (whether negligent or not), omission or misconduct of [Flawless] or its employees, subcontractors, representatives or agents. . .". Flawless explicitly agreed in the Merchant Agreement to reimburse Momnt and a Lender "upon demand for all legal and other expenses . . . in connection with any of the foregoing."

40.    Section 1 of the Operating Instructions requires Flawless to take reasonable measures to prevent fraudulent activity by Flawless or any of its agents and assist Momnt upon becoming aware of fraudulent activity.

41.    Section 6 of the Operating Instructions require Flawless to ensure that each loan agreement arises out of a bona fide sale and will not involve the use of the loan

for any purpose other than the purchase of Flawless' offerings to consumers that are the subject of the loan agreement.

42.    Flawless also agreed in Section 6 of the Operating Instructions that it would not conduct activities that violation any applicable law, including consumer protection laws.

Defendant Engaged in Fraud through Flawless

43.    In violation of Flawless' obligations to Momnt, Defendant intentionally caused Flawless to engage in fraudulent activity which violated the Merchant Agreement.

44.    Defendant failed to ensure that each loan agreement arose out of a bona fide sale of Flawless' services.  Instead, Defendant intentionally allowed customers to submit loan applications through the Momnt platform to obtain the loan proceeds without any intent to perform the agreed-upon home improvement work.

45.    Defendant failed to ensure that the loan proceeds would be used only for the purchase of Flawless' offering to consumers.  To the contrary, Defendant used loan proceeds intended for customer home improvement for his own personal purposes.

46.    Defendant failed to take reasonable measures to prevent fraudulent activity by Flawless or any of its owners or agents. Indeed, Defendant used access to consumer home improvement loan proceeds for fraudulent purposes, such as purchasing vehicles for personal use, and took no measures to prevent fraudulent activity.

47.     Defendant failed to assist Momnt upon becoming aware of fraudulent activity. To the contrary, Defendant concealed his and others' fraud from Momnt at all times in order to continue to have access to the customer loan proceeds without any intent of performing the contracted work.

Momnt's Damages

48.     The total outstanding balance of loans provided through Momnt's platform to Flawless customers as of June 1, 2025 exceeds $9.2 million.

49.     To date, the combined value of the loans where customers complained that Flawless failed to perform the contracted work is at least $446,269.

50.     The Defendant used the fiction of the Flawless entity to individually and fraudulently obtain loan funds through Momnt with no intention of completing the contracted work.

51.     The Defendant derived direct financial benefits from his fraud, having obtained access to Momnt's program, and pocketed the loan proceeds.

52.     The Defendant either individually or jointly used the proceeds of customer loans for his own personal benefit.

53.     For example, the New Mexico Attorney General's Office alleges in the Action against Defendant and the other Members that Defendant purchased a total of five vehicles with a value exceeding $130,000 between September 2024 (the month that

Momnt terminated its relationship with Flawless) and November 2024. See Ex. C at ¶¶ 32, 39.

54.    According to the New Mexico Attorney General's Office, consumers paid Flawless over $700,000.00 for work that Flawless never completed.[2]

55.    The participation of the Defendant, individually and jointly, has directly caused damage to Momnt in the form of refunds to consumers, indemnity and defense to its lending partners, legal fees, expenses, and the potential for future restitution and civil penalties.

## COUNT I: CONVERSION

56.    Momnt repeats and re-alleges the allegations contained in paragraphs 1 through 55 of this Complaint as if fully set forth herein.

57.    Defendant engaged in an unauthorized assumption and exercise of the right of ownership over the loan proceeds that were intended to be used by Flawless' customers to fund home improvement projects but were not.

58.    Defendant further engaged in an unauthorized assumption and exercise of the right of ownership over the loan proceeds that were intended to be used by its

---

[2] The allegation in New Mexico's complaint that consumers paid Flawless over $700,000 for work never completed does not necessarily represent the value of loans facilitated through the Momnt platform or originated by Cross River Bank. Some consumers may have paid cash for services or obtained loans from a lender other than Cross River Bank.

customers to fund home improvement projects, by refusing to refund the loan proceeds.

59.    Defendant's use and possession of and other act of dominion over the loan proceeds to which he is not entitled constitutes conversion.

60.    As a direct and proximate consequence of Defendant's conversion, Momnt has suffered actual damages, including damage to its reputation and good will, in an amount exceeding $75,000.00.

## COUNT II: FRAUD

61.    Momnt repeats and re-alleges the allegations contained in paragraphs 1 through 60 of this Complaint as if fully set forth herein.

62.    Defendant knew that each loan agreement submitted by one of Flawless' customers on the Momnt platform had to arise from a bona fide sale of Flawless' services and that the loan proceeds could be used solely for the purchase of Flawless' offerings to consumers.

63.    Defendant represented to Momnt that Flawless' customers had a bond fide contract for home improvement services.

64.    Defendant knew that Momnt's lending partners are in the business of approving loans for qualified customers with a bona fide contract for services.

65.    Defendant also knew that Momnt's lending partners were likely to approve loans for qualified individuals who entered into home improvement contracts with Flawless.

66.    Defendant caused Flawless to entered into numerous contracts with qualified Flawless customers for home improvements without any intention of completing the agreed-upon work.

67.    Flawless entered into home improvement contracts, at Defendant's direction, with consumers solely to secure approval for home improvement loans from Momnt's lending partners to access the loan proceeds.

68.    In many instances, Flawless failed to complete the work for which consumers contracted. In other instances, Flawless did not even commence the work.

69.    Instead of causing Flawless to perform the contracted work, Defendant utilized the liquid cash from consumer loans facilitated through the Momnt platform for his own benefit.

70.    By way of example, and upon information and belief, Defendant used approximately $130,000 of funding obtained by Flawless though the Momnt platform to purchase personal vehicles titled in his individual name between September and November 2024.

71.    Momnt's lending partner reasonably relied on Flawless' consumer contracts as a basis for approving and funding consumer loans.

72.    As a proximate result of Defendant's fraudulent conduct, the loans originated by Momnt's lending partners have been compromised, causing Momnt to suffer damages.

73.    Defendant is also directly liable for this fraud because he facilitated, encouraged, approved of, or ratified the alleged conduct and because he took advantage of the legal fiction of the independent corporation for his own personal gain.

74.    By virtue of the foregoing, Momnt is entitled to have and recover from Defendant damages in excess of $75,000 and such other actual, consequential, and incidental damages occasioned by Defendant's fraudulent conduct, together with punitive damages, attorneys' fees, and court costs.

## COUNT III: ATTORNEYS' FEES

75.    Momnt repeats and re-alleges the allegations contained in paragraphs 1 through 74 of this Complaint as if fully set forth herein.

76.    Because Defendant has thus far refused to remedy the breach of the Merchant Agreement or obligations in the Operating Instructions, and has failed to refund loans made to Flawless customers where the work was not performed, or defend and indemnify Momnt in connection with Defendant's fraudulent scheme, Momnt has suffered damages in the form of expending considerable time and resources pursuing compensation and to retain attorneys to prosecute this action.

77.    Additionally, Momnt anticipates that it will be required to expend considerable time and resources, including attorneys' fees, in connection with defending its lending partner(s) in connection with the Lawsuit.

78.    Defendant's failure and refusal to cause Flawless to return loan proceeds for work never performed by Flawless or to indemnify Momnt for its current and future losses has caused unnecessary trouble and expense for Momnt.

79.    Section 21 of the Merchant Agreement provides the following:

> **DAMAGES; ATTORNEYS' FEES.** MERCHANT SHALL BE LIABLE TO PROGRAM INDEMNIFIED PERSONS FOR ALL DAMAGES UNDER APPLICABLE LAW AND COSTS INCURRED IN ANY COLLECTION ACTION OR OTHER LEGAL PROCEEDING ANY PROGRAM INDEMNIFIED PERSON MAY BRING AGAINST MERCHANT (INCLUDING ATTORNEYS' FEES, COURT COSTS, INTEREST, FILING FEES AND OTHER EXPENSES OF ANY KIND WHATSOEVER). TO THE MAXIMUM EXTENT PERMITTED BY LAW, IN NO EVENT SHALL ANY PROGRAM INDEMNIFIED PERSON BE LIABLE TO MERCHANT OR ANY OTHER PERSON FOR ANY GENERAL, PUNITIVE, SPECIAL, INDIRECT, INCIDENTAL, CONSEQUENTIAL OR COVER DAMAGES, INCLUDING LOSS OF PROFIT, LOSS OF PERSONAL PROPERTY, OR ANY OTHER SIMILAR DAMAGE OR LOSS.

80.    Accordingly, Momnt is entitled to recover its attorneys' fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11 and Section 21 of the Merchant Agreement.

81.     Defendant is liable for Momnt's attorneys' fees as an agent of Flawless and because he took advantage of the legal fiction of the independent corporation for his own personal gain and is therefore individually liable for Momnt's injuries.

### COUNT IV: PUNITIVE DAMAGES

82.     Momnt repeats and re-alleges the allegations contained in paragraphs 1 through 81 of this Complaint as if fully set forth herein.

83.     Defendant's misconduct with respect to the fraud on Momnt and Flawless' customers as alleged herein and in the Action was willful, wanton, malicious, and demonstrated conscious indifference to the consequences.

84.     The Defendant knew that neither he nor Flawless had any right to receive the proceeds of customer loans originated for the purpose of fulfilling and funding home improvement projects that Defendant never intended for Flawless to complete.

85.     Momnt has also demanded that Defendant and the other Members return of the loan proceeds for work that Flawless contracted for, but never completed, and yet Defendant and the other Members willfully refused to return the funds.

86.     Defendant's willful and wanton misconduct justifies an award of punitive damages pursuant to O.C.G.A. § 51-12-5.1.

## **PRAYER FOR RELIEF**

For these reasons, Momnt respectfully requests that the Court issue summons for Defendant to appear and answer, and that Momnt be awarded a judgment against Defendant for the following:

a.  That the Court enter judgment in favor of Plaintiffs and against Defendant on the causes of action stated above and any other cause of action which may be added to this Complaint by amendment or otherwise;

b.  That the Court award damages in favor of Plaintiffs as compensation for Defendant's fraud, including pre and post-judgment interest, costs, and attorneys' fees;

c.  That the Court award Plaintiffs punitive damages;

d.  That the Court award such other relief as the Court may deem just and proper.

Dated: July 11, 2025                    Respectfully submitted,

**TROUTMAN PEPPER LOCKE LLP**

By:    /s/ *Mark J. Windham*
        Mark J. Windham
        Georgia Bar No. 113194
        *Mark.Windham@troutman.com*
        Bank of America Plaza
        600 Peachtree Street NE, Ste. #3000
        Atlanta, GA 30308

T: 404.885.3000
F: 404.885.3900

*Counsel for Plaintiffs Momnt*
*Technologies, LLC and Momnt*
*Servicing Company, LLC*