# EXHIBIT A

## MERCHANT AGREEMENT

This **MERCHANT AGREEMENT** (including all exhibits, addendum, schedules, and attachments) (the "Agreement") dated as of Aug. 29, 2022 is made by and between **MOMNT TECHNOLOGIES, INC. FKA ARTIS TECHNOLOGIES**, a Delaware Corporation ("Company"), and **Flawless Results, LLC** ("Merchant").

**WHEREAS**, Company is in the business of providing services to enable Lenders to provide Accounts and related point-of-need financial services through merchants through its system (the "Program");

**NOW, THEREFORE**, in consideration of the mutual agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. **Program.** Company is the administrator of the Program and, among other things, provides administrative, technical and ministerial services to Lenders. Merchant agrees to participate in the Program in accordance with the terms of this Agreement, including the Operating Instructions, to allow Merchant's customers to obtain Loans from a Lender for purchases of eligible Offerings offered by Merchant, which Loans are funded by Lenders. Merchant understands that Company is committed to meeting or exceeding all regulatory requirements that are applicable to the Program and that Merchant plays an integral role in helping Company ensure compliance with all such requirements. Company enters into this Agreement under delegated authority in its role as agent for Lenders participating in the Program.

2. **Merchant's Obligations and Responsibilities under the Program.** All of Merchant's obligations and responsibilities under the Program are detailed in this Agreement and the Operating Instructions in effect from time to time, which are available on Company's website at https://www.momnt.com/operating-instructions/. In the event that Company or a Lender believes Merchant has failed to comply with this Agreement or the Operating Instructions, Company may suspend Merchant's participation in the Program and take such other action as it deems appropriate, including terminating this Agreement or withholding future funds.

3. **Overview of Company's Obligations and Responsibilities under the Program.** Company, acting on behalf of Lenders, will administer the Program. A Lender may offer Merchant's qualified customers closed-ended (installment) Loans for the purpose of financing purchases of eligible Offerings offered by Merchant. Lenders will direct the terms and conditions under which Loans are extended to Borrower(s).

4. **Modification.** Except as provided in Section 5, Company, acting on behalf of Lenders, may modify this Agreement or the Operating Instructions by providing written or electronic notice to Merchant. Merchant's continued referral in the Program of new credit applications after the effective date of any such modification will constitute Merchant's acceptance of the modified terms and Merchant's agreement to be bound by them. If Merchant does not want to accept such modifications, it must not refer any credit applications subsequent to such effective date and must advise Company in writing of its decision. Notwithstanding the foregoing, modifications to this Agreement that are applicable only to Merchant and not to other participants in the Program shall not be effective unless provided to Merchant in writing and agreed to by Merchant, either in writing or by its continued participation in the Program.

5. **Fees.** For each funded Loan, in addition to any fee imposed by the applicable payment card network for processing the transaction (which may include a fee imposed by Company for transactions processed directly through Company's payment network), Merchant will pay Company a transaction fee ("Merchant Fee") in return for access to the Program, including access to the Program technology platform to allow Merchant's customers to obtain Loans from Lenders. The initial schedule of Merchant Fees applicable to Merchant is listed on the Rate Sheet presented during Merchant onboarding to the Program and agreed to by Merchant at Execution of this Agreement. Company may modify Merchant Fees by providing a 30-day written or electronic notice to Merchant. Merchant's continued referral in the Program of new credit applications after the effective date of any such modification of Merchant Fee(s) will constitute Merchant's acceptance of the modified Merchant Fee(s) and Merchant's agreement to be bound

by them. If Merchant does not want to accept such modifications, it must not refer any credit applications subsequent to such effective date. The Merchant Fee is due and payable to Company upon the funding of a Loan. In the event that Merchant does not pay any Merchant Fee or any other fees when due, Company will be entitled to immediately suspend Merchant's participation in the Program, and, in addition to all other rights and remedies under this Agreement, Company may, on behalf of itself and Lenders, assess Merchant such additional charges (such as late payment or returned payment charges).

6. **Representations and Warranties.**  Merchant represents and warrants that (i) Merchant is duly organized, validly existing and in good standing under the laws of its jurisdiction of organization and has all requisite power and authority to carry on its business as presently conducted and is duly qualified or licensed to do business and is in good standing (where such concept is recognized under applicable law) in each jurisdiction where the nature of its business or the ownership or operation of its properties makes such qualification or licensing necessary, (ii) Merchant has all requisite power and authority to execute and deliver, and perform its obligations under, this Agreement and to consummate the transactions contemplated hereby, (iii) the execution, delivery and performance of this Agreement by Merchant and the consummation by Merchant of the transactions contemplated hereby have been duly authorized by all necessary action on the part of Merchant and do not contravene any government or contractual restriction applicable to Merchant, and (iv) this Agreement has been duly executed and delivered by Merchant and, assuming the due authorization, execution and delivery by Company, constitutes a legal, valid and binding obligation of Merchant enforceable against Merchant in accordance with its terms.

7. **Operating Instructions.**  Merchant shall satisfy all obligations and requirements in the Operating Instructions and all other requirements as otherwise may be required from time to time by Company, acting on behalf of Lenders, and communicated to Merchant. The terms of the Operating Instructions are incorporated by reference into this Agreement. In the event there is any inconsistency between any Operating Instructions and this Agreement, this Agreement shall govern. Notwithstanding the provisions regarding notice in Section 19, Merchant agrees that Company may post the Operating Instructions on the Program website and that doing so will constitute notice thereof to Merchant. Merchant agrees that it has an ongoing obligation to check the website on a monthly basis for any updates or changes to the Operating Instructions.

8. **Term, Suspension and Termination.**

(a) This Agreement shall be effective on the date of Company's notice of Merchant's approval to participate in the Program and shall remain effective until either party gives the other party written notice of its decision to terminate this Agreement. The termination of this Agreement shall not affect the rights of either party to recover for breaches occurring (or with respect to matters relating to Loans originated) prior thereto or with respect to provisions of this Agreement that by the nature of their terms continue after termination, including Section 13.

(b) In addition to the right of termination under this Section 8, Company, upon written notice to Merchant, may suspend Merchant's ability to refer new funding transactions on approved Loans or new credit applications pursuant to this Agreement. Such suspension will be for so long as Company specifies to resolve disputes between Merchant and Company or to resolve consumer or Borrower complaints related to the Program.

(c) Notwithstanding termination of this Agreement, the provisions of this Agreement and the Operating Instructions will continue in full force and effect as to all Transaction Requests accepted or approved by a Lender under the Program prior to termination; provided, however, that if an authorization number for a Transaction Request is no longer valid, neither Company nor any Lender will be obligated to accept such Transaction Request. In the event that Company has provided any equipment to Merchant in connection with the Program, Merchant agrees to return such equipment to Company upon termination of this Agreement. In addition, upon any such termination, Merchant shall destroy or return to Company all documentation or materials relating to the Program without retaining any copies.

(d) In the event of breach of this Agreement by either party, the non-breaching party will be entitled to exercise any and all rights and remedies as shall be available to it at law or in equity. The non-breaching party may exercise remedies concurrently or separately, and the exercise of one remedy will not be deemed either an election of such remedy or a preclusion of the right to exercise any other remedy.

9.  **Reserve Account; Related Matters.**  If (a) Company, at the direction and under the control of Lenders, determines that (i) Merchant's financial condition has deteriorated or is deemed, in the sole discretion of Company, to be unacceptable, (ii) Merchant is in breach of this Agreement, (iii) the Program has experienced unusual levels of Borrower disputes or complaints from Borrowers or third parties, including regulatory authorities, relating to Merchant, or (iv) the number of Transaction Requests presented to the Program by Merchant is substantially different from historical trends, (b) Company becomes aware of some other fact, event or circumstance related to Merchant that causes it to believe that a reserve fund is reasonably necessary or advisable, or (c) a notice of termination has been provided by either party to the other in connection with this Agreement, then, and in each such case, (x) Merchant will pay Company, on behalf of Lenders, upon demand, or (y) Company may, on behalf of Lenders, withhold from any amounts owed Merchant in respect of any Transaction Request, or (z) Company may, on behalf of Lenders debit Merchant's bank account, an amount Company deems necessary to fund a reserve ("Reserve Account"). Company may charge to the Reserve Account any amount Merchant owes Company or Lenders or that is otherwise due from Merchant under this Agreement. Merchant's obligations to Company and Lenders shall not be limited by the amount held in the Reserve Account. The Reserve Account does not excuse Merchant from paying any amount that Merchant would otherwise owe under this Agreement. Merchant shall not be entitled to any interest on amounts held in the Reserve Account. Company will return to Merchant any amount remaining in the Reserve Account when Company determines a Reserve Account is no longer necessary; provided, however, no refund shall be made later than one (1) year from the termination date of this Agreement. In addition, upon the occurrence of any of the events described in clauses (a), (b) or (c) of the first sentence of this Section 9, Company may, on behalf of itself and Lenders, impose such limitations on Merchant's participation in the Program, or take such other action, as Company deems appropriate.

10. **Assignment.**

(a) Merchant may not assign this Agreement (by operation of law or otherwise) without the prior written consent of Company, acting on behalf of, and at the direction and under the control of, Lenders; any purported assignment without such consent shall be void. For purposes of this Section 10(a), a transfer or sale of a majority interest in Merchant shall be deemed an assignment. Company and Lenders may assign this Agreement and any of the rights or obligations hereunder at any time. In the event of such assignment, the assignee thereof shall have the same rights and remedies as any assignor under this Agreement, provided that such assignor shall not be relieved of its obligations hereunder arising prior to such assignment unless such assignment is part of an assignment of all or substantially all of its assets and the assignee assumes its obligations hereunder. Otherwise, this Agreement is binding upon the parties and their successors and assigns.

(b) Merchant acknowledges that Company will enter into agreements with Lenders to provide financing under the Program and that such persons will originate and own the Loans contemplated hereby. Each Lender shall be a third party beneficiary of the obligations of Merchant hereunder and shall have the benefit of such obligations and the right to enforce (but not to the exclusion of Company for its own account) such obligations with respect to any Loan(s) with respect to which it is the Relevant Lender.

11. **Merger and Integration.**  Except as specifically stated otherwise herein, this Agreement, together with the Operating Instructions, sets forth the entire understanding of Company and Merchant relating to the subject matter hereof, and all prior understandings, written or oral, are superseded by this Agreement and the Operating Instructions. This Agreement may not be modified, amended, waived or supplemented except as provided herein. All exhibits, schedules and addendums hereto and any documents or instruments delivered pursuant to any provision hereof are expressly made a part of this Agreement as fully as though completely set forth herein.

12. **Merchant Obligations Unaffected.**  Merchant's obligations under this Agreement and the Operating Instructions are not affected by any settlement, extension, forbearance or variation in terms that Company, at the direction and under the control of Lenders, may grant in connection with any Loan or by the release of the obligations of any Borrower by a court or by operation of law.

13.     **Indemnification; Related Matters.**

(a) Merchant shall indemnify, defend (at Merchant's sole expense and with counsel reasonably acceptable to Company acting on behalf of, and at the direction and under the control of, Lenders), and hold harmless Company and any Lender that funds or owns a Loan (or the economic rights thereto) to a customer of Merchant (and their respective officers, directors, shareholders, members, partners, managers, employees, representatives and agents) (each a "Program Indemnified Person") from and against any and all losses, claims, investigations, litigation, proceedings, liabilities, damages, administrative charges and expenses (including attorneys' fees) of any kind whatsoever (collectively a "Loss") directly or indirectly arising out of or related to Merchant's breach of any obligation owed to Company or any third party, including: (i) breach of any representation, warranty or covenant of Merchant contained in this Agreement or the Operating Instructions, including the Merchant Agreement Compliance Addendum attached hereto; (ii) failure of Merchant to comply with any applicable federal, state or local law, rule, regulation or ordinance; (iii) any Loss sustained by or threatened against any Program Indemnified Person attributable in whole or in part to negligence, fraud, error (whether negligent or not), omission or misconduct of Merchant, its employees, subcontractors, representatives or agents; (iv) any Loss sustained by or threatened against any Program Indemnified Person by reason of, or attributable in whole or in part to, Merchant's failure to perform any of its obligations, or discharge any of its responsibilities, to any person, including failure to pay fees when due; (v) any defect in any Offerings sold or provided by Merchant or any breach of any express or implied warranty in connection with such Offerings; and (vi) any voluntary or involuntary bankruptcy or insolvency proceeding by or against Merchant; provided that Merchant shall have no obligations or liability under this Section 13(a) to the extent a Loss results solely from the gross negligence or willful misconduct of a Program Indemnified Person. Merchant further agrees to reimburse each Program Indemnified Person upon demand for all legal and other expenses (including expenses related to investigation, settlement, compromise or satisfaction) incurred by any such Program Indemnified Person in connection with any of the foregoing.

(b) Merchant agrees that if it breaches any representation or warranty herein or if a Borrower asserts any claim or defense (regardless of the validity thereof) arising out of any transaction evidenced by any Loan Agreement or Transaction Request or cancels any transaction evidenced by any Loan Agreement or Transaction Request, Merchant will refund on demand the amount of any Loan affected, plus any finance or other charges related to such Loan. Merchant also agrees to indemnify and hold the Program Indemnified Persons harmless for any and all breaches of warranties, damages and costs, including attorneys' fees, which any Program Indemnified Person may sustain as a result of any such event. Company, on its own behalf or on behalf of Lenders (as applicable), may, at its option, deduct any amount Merchant owes Company or Lenders pursuant to this paragraph (b) or any other provision of this Agreement from any amount Company or Lenders may owe Merchant. Where Merchant has reimbursed, indemnified or held Program Indemnified Persons harmless, or where Company, on its own behalf or on behalf of Lenders (as applicable), has deducted such amounts from any amount Company or a Lender owes Merchant, Merchant shall have the rights specified in Section 8(b)(v) of the Operating Instructions, subject to the limitations contained therein.

(c) Company shall indemnify, defend (at Company's sole expense and with counsel reasonably acceptable to Merchant) and hold harmless Merchant (and Merchant's officers, directors, shareholders, members, partners, managers, employees and agents) (each a "Merchant Indemnified Person") from and against any Loss directly or indirectly arising out of (i) the gross negligence or willful misconduct of Company, and (ii) its failure to comply with the terms of this Agreement or any applicable federal, state, or local law, rule, regulation or ordinance; provided that Company shall have no obligations or liability under this Section 13(c) to the extent a Loss results solely from the gross negligence or willful misconduct of a Merchant Indemnified Person.

(d) In the event that a Program Indemnified Person or a Merchant Indemnified Person shall receive any claim or demand or be subject to any suit or proceeding in connection with which a claim may be made against such person under this Section 13, the indemnified party shall give prompt written notice thereof to the indemnifying party and the indemnifying party will be entitled to participate in the settlement or defense thereof; provided that the failure to give such notice in a timely manner shall not impact the availability of indemnification except to the extent that it materially and adversely impacts the defense of any such claim or demand. In any case, the indemnifying party and the indemnified party shall cooperate (at no cost to the indemnified party) in the settlement or defense of any such claim, demand, suit or proceeding.

(e) In the event and for so long as any Program Indemnified Person actively is contesting or defending against any action, suit, proceeding, hearing, investigation, charge, complaint, claim, or demand in connection with (i) any transaction contemplated under this Agreement or (ii) any fact, situation, circumstance, status, condition, activity, practice, plan, occurrence, event, incident, action, failure to act, or transaction involving Merchant or any customer of Merchant, Merchant will cooperate with such Program Indemnified Person and its counsel with respect thereto, make available any personnel under its control, and provide such testimony and access to its books and records, including allowing copies to be made by such Program Indemnified Person or its representatives, as shall be reasonably necessary in connection therewith, all at the sole cost and expense of Merchant.

14. **Nonwaiver and Extensions.** The parties shall not by any act, delay, omission or otherwise be deemed to have waived any rights or remedies hereunder. Each party agrees that the other party's failure to enforce any of its rights under this Agreement or the Operating Instructions shall not affect any other right or the same right in any other instance.

15. **Ownership of Program.** Neither Merchant nor any parent, subsidiary or other Affiliate of Merchant shall by virtue of this Agreement secure any title to or other ownership interest in any elements of the Program, including the Operating Instructions, written specifications, training materials, programs, systems, screens or any documentation or materials relating thereto, which are Company's or any Lender's exclusive property. Merchant agrees to use the elements of the Program and information about the Program only for the purpose of enabling Merchant to use the Program provided under this Agreement and for no other purpose.

16. **Rights of Persons Not a Party.** Except as expressly provided herein, this Agreement shall not create any rights on the part of any person not a party hereto, whether as a third party beneficiary or otherwise.

17. **Governing Law; Severability.** This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia without reference to the conflict of laws provisions thereof. If any provision of this Agreement is found to be illegal, unenforceable or contrary to applicable law, such provision shall be deemed ineffective without invalidating the remaining provisions hereof and this Agreement may be reformed giving the effect to the greatest extent possible to the intentions of the parties as reflected by the ineffective provision.

18. **Independent Contractor.** This Agreement does not (and shall not be construed to) establish a partnership, joint venture, agency relationship or other form of business association between Merchant and Company or any Lender. Company and Merchant are independent contractors, and neither party shall have the authority to speak for, commit or bind the other party.

19. **Notices.** All demands, notices and communications hereunder shall be in writing. Notices shall be and deemed to have been duly given (a) three (3) Business Days from the date of mailing by regular first class U.S. mail; (b) one (1) business day from the date of mailing by a commercial overnight carrier (providing proof of delivery); (c) the business day on which notice is sent by facsimile with a date and time confirmation sheet that the fax went through to the other party; or (d) the business day on which notice is sent by e-mail, provided that notice shall not be deemed to have been duly given to any Merchant with respect to which Company has received an indication the email was not actually delivered to such Merchant. For purposes of this Section 19, Saturdays, Sundays and federal holidays shall be considered non-Business Days. All notices to Company and a Lender hereunder shall be sent to the address set forth below or to such other address, fax number or e-mail address as Company may advise Merchant in writing. Notices to Merchant shall be sent to Merchant's postal or street address, fax number or e-mail address set forth in the Application or such other address, fax number or e-mail address as Merchant may advise Company in writing.

If to Company:	Momnt Technologies, Inc
100 Peachtree St. NW, STE 310
Atlanta, GA 30303
Attention: Legal Department

20. **Execution.** This Agreement, through execution of the Application, may be executed by facsimile or some other enforceable electronic signature, which shall be deemed an original.

21.     **DAMAGES; ATTORNEYS' FEES.**  MERCHANT SHALL BE LIABLE TO PROGRAM INDEMNIFIED PERSONS FOR ALL DAMAGES UNDER APPLICABLE LAW AND COSTS INCURRED IN ANY COLLECTION ACTION OR OTHER LEGAL PROCEEDING ANY PROGRAM INDEMNIFIED PERSON MAY BRING AGAINST MERCHANT (INCLUDING ATTORNEYS' FEES, COURT COSTS, INTEREST, FILING FEES AND OTHER EXPENSES OF ANY KIND WHATSOEVER). TO THE MAXIMUM EXTENT PERMITTED BY LAW, IN NO EVENT SHALL ANY PROGRAM INDEMNIFIED PERSON BE LIABLE TO MERCHANT OR ANY OTHER PERSON FOR ANY GENERAL, PUNITIVE, SPECIAL, INDIRECT, INCIDENTAL, CONSEQUENTIAL OR COVER DAMAGES, INCLUDING LOSS OF PROFIT, LOSS OF PERSONAL PROPERTY, OR ANY OTHER SIMILAR DAMAGE OR LOSS.

22.     **JURISDICTION.**  ANY SUIT, COUNTERCLAIM, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY, ANY RELATED DOCUMENT OR UNDER ANY OTHER DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH OR THEREWITH, OR ARISING FROM ANY RELATIONSHIP EXISTING IN CONNECTION WITH THIS AGREEMENT, MUST BE BROUGHT BY EITHER PARTY EXCLUSIVELY IN THE STATE OR SUPERIOR COURT OF FULTON COUNTY, GEORGIA OR IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA, AND THE PARTIES HEREBY IRREVOCABLY SUBMIT TO THE EXCLUSIVE JURISDICTION OF SUCH COURTS AND ANY APPELLATE COURTS THEREOF FOR THE PURPOSE OF ANY SUCH SUIT, COUNTERCLAIM, ACTION OR PROCEEDING OR JUDGMENT THEREON (IT BEING UNDERSTOOD THAT SUCH CONSENT TO THE EXCLUSIVE JURISDICTION OF SUCH COURTS WAIVES ANY RIGHT TO SUBMIT ANY DISPUTES HEREUNDER TO ANY COURTS OTHER THAN THOSE ABOVE).

23.     **WAIVER OF JURY TRIAL; NO CLASS ACTION.**  PROGRAM INDEMNIFIED PERSONS AND MERCHANT INDEMNIFIED PERSONS HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION, SUIT, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY, ANY RELATED DOCUMENT OR UNDER ANY OTHER DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH OR THEREWITH, OR ARISING FROM ANY RELATIONSHIP EXISTING IN CONNECTION WITH THIS AGREEMENT, AND AGREE THAT ANY SUCH ACTION, SUIT, PROCEEDING OR COUNTERCLAIM SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY AND THAT THIS PROVISION IS A MATERIAL INDUCEMENT FOR ENTERING INTO THE AGREEMENT. TO THE FULLEST EXTENT PERMITTED BY LAW, EACH PARTY HERETO AGREES THAT ANY SUCH PROCEEDING WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS, CONSOLIDATED OR REPRESENTATIVE ACTION.

24.     **Further Assurances.**  Each party hereto agrees to execute all such additional documents and instruments and to do all such further things as the other party hereto may reasonably request in order to give effect to and consummate the transactions contemplated hereby.

25.     **Construction.**

(a) For purposes of this Agreement, whenever the context requires: the singular number includes the plural, and vice versa; the masculine gender includes the feminine and neuter genders; the feminine gender includes the masculine and neuter genders; and the neuter gender includes masculine and feminine genders.

(b) The parties hereto have participated jointly in the negotiation and drafting of this Agreement and, in the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as jointly drafted by the parties hereto and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any provision of this Agreement.

(c) As used in this Agreement, the words "include" and "including," and variations thereof, will not be deemed to be terms of limitation, but rather will be deemed to be followed by the word "without limitation."

(d) Except as otherwise indicated, all references in this Agreement to "Sections," "Exhibits" and "Schedules" are intended to refer to Sections of this Agreement and Exhibits or Schedules to this Agreement.

(e) All terms defined in this Agreement shall have the defined meanings when used in any document made or delivered pursuant hereto unless otherwise defined therein.

(f) Any agreement, instrument or statute defined or referred to herein or in any agreement or instrument that is referred to herein means such agreement, instrument or statute as from time to time amended, modified or supplemented, including (in the case of agreements or instruments) by waiver or consent and (in the case of statutes) by succession of comparable successor statutes and references to all attachments thereto and instruments incorporated therein.

(g) The word "or", when used in this Agreement, is not exclusive.

26. **Definitions.** For purposes of this Agreement and the Operating Instructions:

(a) "Access Device" is a card or other item displaying an Account Number issued to a Borrower for use in connection with the Program to access funds approved to be advanced to such Borrower by a Lender pursuant to the Program.

(b) "Account Number" is a unique identification number assigned by the Program or the applicable payment card network to a Loan.

(c) "Affiliate" is a person that, directly or indirectly, controls, or is controlled by, or is under common control with, Merchant. For purposes of this definition of Affiliate, "control" shall mean the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting shares, by contract, or otherwise.

(d) "Application" is the Program Application for Merchants.

(e) "Borrower" is a customer of Merchant who has applied for and has been approved for a Loan.

(f) "Borrower Information" is any personal information about any applicant or co-applicant or any Borrower received in connection with a Loan, or an application for a Loan, whether included in a credit application or through use of the Account Number or Access Device or obtained from the Program, including the applicant or co-applicant's name, address, social security number, date of birth, income information, Account Number and Loan information.

(g) "Business Day" is any day that is not a Saturday, a Sunday or other day on which banks are required or authorized to be closed in Atlanta, Georgia.

(h) "Lenders" are persons making Loans pursuant to the Program and other persons holding title and/or economic rights to Loans originated through the Program. This may include financial institutions, the Company or other legal lending entities.

(i) "Loan" is a loan to a Borrower created pursuant to the Program.

(j) "Loan Agreement" is a written agreement between a Lender and a Borrower containing the terms and conditions of a Loan.

(k) "Loan Documents" are the Loan Agreement, associated Truth-in-Lending Act disclosures and other documentation and communications from a Lender (including documentation regarding online Borrower accounts and describing the rights of Company, acting on behalf of Lenders, to collect from past due Borrowers).

(l) "Loan Products" are different variations of Loans offered through the Program by the Merchant. Loan Products are identified by a Product ID and vary in Term, Annual Percentage Rate of interest ranges, and promotion.

(m) "Offerings" are any goods, services or merchandise that Merchant offers, sells, distributes, provides or installs or that are offered, sold, distributed, provided or installed on behalf of Merchant, other than any goods, services or merchandise designated by Company as not eligible for the Program in the Operating Instructions or otherwise in a notice provided to Merchant.

(n) "Operating Instructions" are any instructions or procedures that Company, at the direction and under the control of Lenders, communicates to Merchant and updates from time to time, provided that updates to the Operating Instructions that are applicable only to the Merchant and not other Merchants generally shall not be effective unless accepted by Merchant in writing.

(o) "person" is an individual, corporation, partnership, limited liability company, joint venture, association, trust, unincorporated organization or other entity.

(p) "Program" is a lending program administered by Company on behalf of Lenders that make consumer loans to customers of merchants in connection with their purchases of goods, services or merchandise from merchants.

(q) "Rate Sheet" is a list of Loan Products available in the Program that the Merchant can opt-in or opt-out of offering to its customers.

(r) "Relevant Lender" means each Lender that holds a Loan or the economic rights thereto.

(s) "Transaction Request" is evidence of a sale in paper or electronic form of Offerings purchased from Merchant by a Borrower and shall include any and all information required by this Agreement.

## Merchant Agreement Compliance Addendum

The Equal Credit Opportunity Act ("ECOA") applies to all persons who in the ordinary course of business regularly participate in the decision whether to extend credit to an applicant. The Lenders expect Company and Merchant to offer the Program in a manner that complies with the ECOA and its enacting regulations.

The ECOA prohibits discrimination in the granting of credit and further states that the applicants for credit shall not be discriminated against because of the person's race, color, religion, national origin, sex, marital status, or age (provided that the applicant has the capacity to enter into a binding contract), the fact that all or part of the applicant's income derives from any public assistance program, or the fact that the applicant has in good faith exercised any right under the federal Consumer Credit Protection Act. State law may also apply to credit products and expand the definition of protected classes to include, among other things, a person's sexual orientation. In addition, the ECOA contains rules as to creditor requirements for co-makers or co-applicants on an extensions of credit.

To help ensure compliance with the ECOA, Merchant represents and warrants to Company that the Merchant will comply with the requirements of ECOA and any regulations, policy statements, and guidance promulgated or announced by federal or state agencies, including the Consumer Financial Protection Bureau, the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, or the office of the Comptroller of the Currency, concerning compliance with ECOA or other fair lending requirements.

Failure to comply with the terms of this Merchant Agreement Compliance Addendum is a material breach of the Agreement.